The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the Full Commission finds the same facts and reaches the same conclusions as those reached by the Deputy Commissioner, with modifications. The Full Commission, in its discretion, has determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support the findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all times alleged in plaintiff's several affidavits, the parties were subject to and bound by the provisions of the North Carolina Tort Claims Act, as well as the jurisdiction of the North Carolina Industrial Commission. N.C. Gen. Stat. § 143-291 etseq.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff had a charge of exceeding a safe speed dismissed that was not put into the records of the Department of Motor Vehicles before 6 October 1995.
4. On 6 October 1995, plaintiff was stopped, arrested, handcuffed, and transported before a magistrate by Trooper K.S. Hamby.
5. Plaintiff has incurred medical bills of $1,234.80 as of 14 October 1996 as a result of his arm injury.
6. Plaintiff has a fifty (50) percent disability to his right hand/arm as rated by a physician.
7. Before 6 October 1995, plaintiff was a carpenter by trade.
8. No damages have been paid to plaintiff by defendants, who deny liability to plaintiff.
9. The following documents have been stipulated into evidence:
 a. Official notice letter of 9 June 1995 sent from Hurder to plaintiff;
 b. Dismissal of File No. 951F281 of 10 August 1995, with computer readout;
 c. North Carolina Uniform Citation for File No. 951F281;
 d. Plaintiff's N.C. Drivers License, reinstated 20 November 1995;
e. Plaintiff's medical records (12pp.).
10. The named employees of the State of North Carolina are Avery County Clerk of Court Robert Taylor, North Carolina State Trooper K. Scott Hamby, and former Commissioner Killian of the North Carolina Department of Motor Vehicles.
11. The issues before the Deputy Commissioner were whether any or all of the above-named employees of the State of North Carolina acted negligently in the performance of their official duties and, if so, whether that negligence proximately caused any injury to plaintiff warranting compensation under the Tort Claims Act.
 *************
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is a twenty-five year old married man.
2. On 27 March 1995, plaintiff was cited for traveling at an excessive rate of speed and ordered to appear in court.
3. Plaintiff's mother contacted her nephew, Avery County Clerk of Court Robert Taylor, seeking to have the charges dismissed. Clerk Taylor promised to have the case continued until a dismissal could be arranged, but failed to do so immediately. Seeking a continuance on behalf of a violator of traffic laws is not an official function of the Clerk of Court. While Clerk Taylor did occasionally seek continuances on behalf of his constituents as a personal courtesy, this was not a service performed in his official capacity as a State employee.
4. When plaintiff failed to appear for his hearing on the citation, a "failure to appear" was entered against him. The failure to appear was received by the Department of Motor Vehicles (hereinafter "DMV") on 8 June 1995. On 9 June 1995, DMV mailed plaintiff a notice informing him that his license would be automatically suspended in sixty days if he did not comply with the 27 March 1995 citation.
5. In May 1995, plaintiff's address was changed by the Postal Service, and he did not receive DMV's 9 June 1995 letter.
6. Shortly before 8 June 1995, Clerk Taylor noticed plaintiff's name on the "failed to appear" list and contacted plaintiff. He apologized for failing to have the case continued and told plaintiff that he would probably have some trouble with DMV regarding the failure to appear notation. Clerk Taylor promised plaintiff that he would take care of the situation. Clerk Taylor's promised actions are not official functions of the Clerk of Court.
7. Early in June 1995, after speaking with plaintiff regarding his failure to appear, Clerk Taylor arranged to have his citation and failure to appear dismissed. Clerk Taylor spoke with an Avery County assistant district attorney and Avery County Chief of Police Ken Barlow in order to arrange for the dismissal. After these discussions, Clerk Taylor believed that the dismissal was effective and that the situation was resolved. However, unknown to Clerk Taylor, the assistant district attorney did not obtain a dismissal until 10 August 1995. The actions taken by Clerk Taylor in arranging for the dismissal of plaintiff's ticket and failure to appear are not official functions of the Clerk of Court.
8. On 8 August 1995, sixty days after DMV received notice of plaintiff's failure to appear, plaintiff's driving privileges were automatically revoked. On 10 August 1995, an assistant district attorney obtained a dismissal of plaintiff's charge. On 14 August 1995, the Avery County Office of Clerk of Court sent a computerized notification of the dismissal to DMV via the State Information Processing System (hereinafter "SIPS").
9. Due to a malfunction in SIPS, DMV did not receive the dismissal notification. DMV discovered the malfunction in September 1995, and management information services corrected the defect in SIPS at that time. If the dismissal had been properly recorded with DMV, plaintiff's license status would have been noted as eligible for reinstatement rather than revoked for failure to appear.
10. On 6 October 1995, plaintiff was observed by State Trooper K. Scott Hamby operating a motor vehicle at approximately 70 mph coming out of a 45 mph into a 55 mph zone. Trooper Hamby pulled plaintiff over and asked to see his driver's license. A check revealed that his license had been revoked for failure to appear at a scheduled hearing. A trooper has discretion in deciding whether to arrest a suspect driving with a suspended or revoked license. Because plaintiff's revocation was due to a failure to appear, Trooper Hamby's decision to arrest plaintiff was reasonable.
11. Plaintiff presented no difficulties to Trooper Hamby when he was told he was being placed under arrest. Pursuant to mandated Highway Patrol procedures, plaintiff's hands were handcuffed behind his back for the duration of transport in the patrol car to the Sheriff's Office. Trooper Hamby did not "slap" the cuffs on plaintiff, and he double-locked them to prevent further constriction of the cuffs during transport. Plaintiff offered no resistance when handcuffed and did not at any time complain to Trooper Hamby of pain.
12. Transport to the Sheriff's Office took twelve to thirteen minutes, and plaintiff's handcuffs were removed upon arrival. After booking plaintiff in the Sheriff's Office, Trooper Hamby brought plaintiff before a magistrate. Plaintiff did not complain of pain resulting from the handcuffs while in the sheriff's office or before the magistrate.
13. On 20 October 1995, plaintiff paid the required fees and his driver's license was reinstated.
14. On 13 October 1995, plaintiff presented to his family doctor, Dr. Steven H. Cook, with a complaint of a wrist strain or sprain. Plaintiff claimed tenderness and immobility of the first and second fingers of his right hand, and numbness of his right thumb and forefinger. Dr. Cook noted a lack of strength, tenderness, and poor flexion extension, with an absence of bruising or cyanosis. Plaintiff was given a brace for his wrist and a program of physical therapy.
15. Plaintiff was reexamined on 20 October 1995. Dr. Cook again noted extreme tenderness, with no contracture deformity. A repeat bone scan did not indicate a fracture. On 25 October 1995, Dr. Cook noted no contracture deformity, good extension and flexion, no cyanosis, clubbing or edema, no tenderness over the median nerve itself, no hypothenar eminence, good radial movement of the hands, good grip, and some tenderness. Plaintiff was again seen by Dr. Cook on 9 November 1995, with similar results. Plaintiff continues to be under the care of Dr. Cook.
16. On 6 May 1996, Dr. Cook provided plaintiff with a note giving plaintiff a fifty (50) percent permanent disability to plaintiff's hand based on a decrease in plaintiff's handgrip, and resulting poor use of his hand. Dr. Cook is a family practitioner and is not an expert in hand or wrist injuries.
17. A reasonable person in Clerk Taylor's position could not foresee (1) that plaintiff would not receive notice of the impending revocation of his license due to the change in his address; (2) that the assistant district attorney would delay in taking the dismissal until after plaintiff's license was automatically revoked on 8 August 1995; (3) that a computer error would result in DMV's failure to properly record the dismissal; (4) that plaintiff would again be stopped for speeding on 6 October 1995; and (5) that plaintiff would allegedly suffer handcuff injuries during his arrest by Trooper Hamby for speeding.
 **************
The foregoing stipulations and findings of fact engender the following additional:
 CONCLUSIONS OF LAW
1. The promises and arrangements made by Clerk Taylor regarding plaintiff's citation were outside the scope of his employment and thus not actionable under the Tort Claims Act. In addition, Clerk Taylor's actions and failures to act were not a proximate cause of plaintiff's alleged injuries. Plaintiff's alleged injuries were the result of intervening causes that could not have been anticipated in the ordinary course of events. Accordingly, the Administrative Office of the Courts is not liable to plaintiff under the Tort Claims Act. N.C. Gen. Stat. § 143-291et seq.; Wirth v. Bracey, 258 N.C. 505, 128 S.E.2d 810 (1963);Register v. Administrative Office of the Courts, 70 N.C. App. 763,321 S.E.2d 24 (1984).
2. The actions of Trooper Hamby during plaintiff's arrest were reasonable under the circumstances, and the arrest procedure he employed was within the mandated rules of the State Highway Patrol. Accordingly, he has committed no act of actionable negligence, and therefore the Department of Crime Control and Public Safety is not liable to plaintiff under the Tort Claims Act. N.C. Gen. Stat. § 143-291 et seq.
3. The operation of the Department of Motor Vehicles as it pertains to this case was according to statutory mandate and was completed without negligence on the part of the agency or its employees. Former Commissioner Killian committed no personal acts of negligence in the handling of plaintiff's case. Therefore, the Department of Motor Vehicles is not liable to plaintiff under the Act. N.C. Gen. Stat. § 143-291 et seq.
 **************
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 DECISION AND ORDER
1. Under the law, plaintiff's claims against each of the defendants must be and hereby are DENIED.
2. Plaintiff's assignment of error to the Deputy Commissioner's refusal to allow him to testify as an expert in handcuffing procedure is hereby OVERRULED.
3. Each party shall bear its own costs.
 *********** S/ ________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ___________________ LAURA K. MAVRETIC COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
RCR:mdg